UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CLAYTON G. WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF SOUTH DAKOTA; LARRY RHODEN, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF SOUTH DAKOTA; AND MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF SOUTH DAKOTA;<br><br>Defendants. | 5:26-CV-05111-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS |

Plaintiff Clayton G. Walker filed a Civil Complaint Injunctive Relief Requested against South Dakota's Secretary of State Monae Johnson, Governor Larry Rhoden, and Attorney General Marty Jackley (collectively "Defendants") in their official capacities. Doc. 1. Walker is a barred filer, but this Court directed the Clerk of Court to file his action and, after a court order denying in forma pauperis status, Doc. 9, Walker paid his filing fee. Along with his Complaint, Walker filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 2, and a Motion for Preliminary and Permanent Injunction, Doc. 4. On September 16, 2026, this Court denied Walker's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and ordered the Defendants to respond to Walker's motion for preliminary and permanent

injunction, Doc. 11. Defendants then filed a Motion to Dismiss, Doc. 17, which this Court now grants.

## I. Background[1]

Walker maintains he is running for United States Senator in South Dakota as an independent. Doc. 1 ¶ 11. Walker suffers from "a severe, temporary physical disability that heavily limits [his] mobility, ambulation, and physical endurance," and "a severe physical trauma resulting from a fall from a ladder. . . which severely impairs [his] gait and makes walking difficult, unstable, and hazardous." Id. ¶¶ 15–16. Because of his injuries, Walker asserts he cannot physically collect petition signatures necessary to earn him a place on the ballot.[2] See id. ¶ 17. Walker also alleges that he cannot use volunteers to collect the signatures "due to the 2014 operational misconduct involving fake names, which resulted in severe legal consequences."[3] Id. ¶ 20.

Walker's eight count Complaint alleges violations of Title II of the Americans with Disabilities Act (ADA), Rehabilitation Act, First, Eighth, and Fourteenth Amendments, Administrative Procedure Act (APA), various South Dakota statutes, and federal disclosure regulations under the Food and Nutrition Act. Id. at ¶¶ 39–66. Walker's eighth count alleges the tort of intentional infliction of emotional distress. Id. at ¶ 67. Walker seeks a declaratory judgment

---

[1] For purposes of this opinion, this Court takes the allegations in Walker's Complaint as true. Oglala Sioux Tribe v. United States, 674 F. Supp. 3d 635, 643 (D.S.D. 2023) ("Courts must accept the plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept the plaintiff's legal conclusions." (citing Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012)). This Court does not make any findings of fact.

[2] According to the South Dakota Secretary of State website, the number of signatures required on a petition for an independent running for United States Senator is 3,502.

[3] Walker filed a Declaration of Clayton Walker in Support of Complaint where he states "I chose not to use volunteers because of the 2014 misconduct involving fake names that led to my felony guilty plea." Doc. 5 ¶ 11.

and preliminary and permanent injunctive relief, asking this Court to order the Defendants to grant him ballot access and "modify [the] petition procedures to accommodate individuals with disabilities," Doc. 1 at Relief ¶ 3. Walker also seeks compensatory and punitive "[d]amages for Discrimination" and "[d]amages for Discrimination and Humiliation" which he calculates as in excess of one million dollars. Doc. 1 at Relief ¶¶ 5–10.

Defendants moved to dismiss, arguing that: (1) the named Defendants cannot provide the relief Walker requests, Doc. 18 at 5–8; (2) Walker lacks standing because he cannot show that he suffers from a concrete and particularized injury, id. at 8–12; and (3) Walker fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), id. at 15. In response, Walker argues that he has pled an injury sufficient to establish standing, Doc. 21 at 13, and the named Defendants are proper parties for injunctive relief, id. at 8. Walker emphasizes his previous claims and restates his requests for relief.[4] Id. at 19.

## II. Injunctive Relief and the Purcell Principle

Walker filed his Complaint on September 10, 2026, in short, seeking to be on the South Dakota ballot as an independent candidate for United States Senator. Absentee voting began in South Dakota on September 18, 2026. Walker is not currently on the ballot.

The Supreme Court of the United States "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." Republican Nat'l Comm. v. Democratic Nat'l Comm., 589 U.S. 423, 424 (2020) (per curiam) (citing Purcell v. Gonzalez, 549 U.S. 1 (2006) (per curiam); Frank v. Walker, 574 U.S. 929 (2014); Veasey v. Perry,

[4] Presumably due to the in-progress election, Walker's requested relief has changed slightly since his initial Complaint. Walker now asks this Court for "[a]n injunction Ordering the Defendants to place plaintiff's name on the ballot," or, alternatively, an order directing Defendants to permit write-in votes and "conspicuously post notice of this write-in option at all physical polling places." Doc. 21 at 19.

574 U. S. —— (2014)). This idea is known as the Purcell principle. In Purcell, the Court recognized that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." 549 U.S. at 4 (quoting Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 231 (1989)). Thus, where there is an impending election, "the necessity for clear guidance" weighs against issuing injunctive relief changing election laws or procedures. Id. at 5–6; see also Merrill v. Milligan, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) ("Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election."). As the Eighth Circuit articulated, "Purcell protects the status quo." Carson v. Simon, 978 F.3d 1051, 1062 (8th Cir. 2020) (per curiam).

The Purcell principle, however, is not absolute. Rather, the Purcell principle "simply heightens the showing necessary for a plaintiff to overcome the State's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." Merrill, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Justice Kavanaugh explained that the Purcell principle

> might be overcome even with respect to an injunction issued close to an election if a plaintiff establishes *at least the following*: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.

Id. (emphasis added); see also Onder v. Missouri, No. 26-2797, 2026 WL 2824043, at *15 (8th Cir. Sep. 21, 2026) (per curiam) (applying the four-part test in support of ruling).[5] For the reasons explained below, Walker fails to establish even one of the four factors required to overcome the Purcell principle's guidance that a lower federal court should not issue an injunction altering election procedures on the eve of the election.

First, Walker has failed to establish that the underlying merits of his claim are likely—let alone "entirely clearcut"—in his favor. With his Complaint, Walker filed a Declaration of Clayton Walker in Support of Civil Complaint, Doc. 5. Walker attached to his Declaration a letter to the Secretary of State, id. at Ex. A, a letter from his physician from February of 2026 stating that Walker may return to light duty work immediately but should avoid prolonged standing or walking, id. at Ex. B, and a letter from the South Dakota Director of Elections from March of 2026 advising Walker that the ADA does not apply to petition signature gathering and alerting him of his responsibility to obtain sufficient petition signatures to be on the ballot. Id. at Ex. C. As this Court noted in its previous order, the Secretary of State's letter is correct that the ADA likely does not entitle Walker to relief from being required to submit the requisite number of petition signatures to be on the ballot. Acosta v. Wolf, No. CV 20-2528, 2020 WL 3077098, at *6 (E.D. Pa. June 10, 2020) (holding that the plaintiff failed to state an ADA claim challenging the Pennsylvania law requiring signatures to appear on the ballot); see also id. ("An 'employer' as defined in Title I of the ADA, does not include 'the United States, a corporation wholly owned by the government of the United States, or an Indian tribe[.]' We cannot grant relief for an individual

---

[5] These factors are heightened compared to the usual factors used to evaluate whether a plaintiff is entitled to preliminary or permanent injunctive relief. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc); Miller v. Thurston, 967 F.3d 727, 735–36 (8th Cir. 2020).

seeking a seat in the United States House of Representatives." (citation and footnote omitted)); Tyler v. 118th US Cong., No. 2:25-CV-0404, 2025 WL 2495599, at *7 (E.D. Cal. Aug. 29, 2025) ("[T]o prevail on a reasonable accommodation claim under Title II, the plaintiff must show that a public entity failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the program or activity."), report and recommendation adopted, No. 2:25-CV-00404, 2026 WL 766201 (E.D. Cal. Mar. 18, 2026).

Walker's likelihood of success on claims under the Rehabilitation Act, Voting Rights Act, and Civil Rights Act is similarly low. See Tyler, 2025 WL 2495599, at *7 (finding the plaintiff "failed to allege facts supporting an ADA or [Rehabilitation Act] claim" in part because "he has not pled any facts showing that he is prevented from using volunteers or contractors to obtain signatures"); Shabazz v. LaRose, No. 1:24-CV-604, 2024 WL 3567706, at *5 (N.D. Ohio July 29, 2024) ("Plaintiff pleads no facts to show he was denied meaningful access to the ballot *by reason of his disability*. For instance, Plaintiff does not plead facts sufficient to show how his disability prevents him from complying with the 5,000 in-person signature requirement." (emphasis added)); Dekom v. New York, No. 12-CV-1318, 2013 WL 3095010, at *12 (E.D.N.Y. June 18, 2013) (dismissing claims under the ADA and Rehabilitation Act where plaintiffs' "disabilities may make it more difficult for them to individually" collect signatures, but the law contemplates volunteers assisting in obtaining signatures), aff'd, 583 F. App'x 15 (2d Cir. 2014); Herschaft v. NY Bd. of Elections, 37 F. App'x 17, 18 (2d Cir. 2002) (finding that the plaintiff's equal protection claims asking for extra time to collect signatures for his election petition failed because plaintiff had not shown the purpose of the election law was to discriminate against disabled individuals).

Walker has not pled any facts that indicate he has been denied meaningful access to the ballot merely because of his disability. Walker, like all other hopeful candidates, has more than

one avenue of collecting the signatures required to appear on the ballot. Walker claims he is unable to use volunteers because of his past legal problems, Doc. 1 ¶ 20, but this impediment is not *by reason of his disability*, see Shabazz, 2024 WL 3567706 at *5. Walker is not entitled to relief for his choice to not use volunteers, and fails to establish a likelihood of success on the merits of his underlying claims.

Second, Walker has some argument for suffering irreparable harm absent relief. If Walker is unable to collect enough signatures to appear on the ballot without some accommodation, his campaign for United States Senator would be harmed without repair, at least until the next election cycle. Still, even with some form of accommodation, Walker's likelihood to somehow meet any signature requirement to establish sufficient support to justify placement on the South Dakota ballot for United States Senator appears very remote. Walker failed to plead any facts indicating he has the requisite voter base willing to sign his petition to appear on the ballot. Dakotans for Health v. Noem, 52 F.4th 381, 392 (8th Cir. 2022) ("To show irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (citation omitted)). While Walker has a plausible argument for irreparable harm under this factor, the speculative nature of the harm still counsels in favor of denying relief.

Third, Walker unduly delayed in filing his complaint. Walker filed his Complaint on September 10, 2026, just 54 days before General Election Day on November 3, 2026. As Exhibit C to his Complaint reflects, Walker knew in March 2026 that the South Dakota Director of Elections expected Walker to obtain sufficient petition signatures to be on the ballot and rejected Walker's position that he deserved special treatment under the ADA. Doc. 5 at Ex. C. Walker's Complaint being filed within 54 days of the election falls well within the interval federal courts have found to be too close to an election to interfere. See Petteway v. Galveston Cnty., 87 F.4th

721, 723 (5th Cir. 2023) (per curiam) (Oldham, J., concurring) (collecting cases and noting "[c]iting Purcell, the Supreme Court refused to bless judicial intervention in State elections 21 days before the general election date, 34 days before the general election date, 46 days before the general election date, 48 days before the primary election date, 92 days before the primary election date, and 120 days before the primary election date" (cleaned up)); see also Eggers v. Evnen, 48 F.4th 561, 566 (8th Cir. 2022) (analyzing the public interest factor for injunctive relief, stating "[t]he fact that the plaintiffs waited until the eleventh hour to raise their time-sensitive election-law claim only tilts the scales further" (citing Benisek v. Lamone, 585 U.S. 155, 160–61 (2018) (per curiam)).

Furthermore, Walker filed his Complaint 13 days *after* the South Dakota Secretary of State was required to certify names of all candidates on the General Election Ballot, see SDCL § 12-8-8 (falling on August 28, 2026), and six days before the deadline for General Election ballots to be printed and in the County Auditors' possession, see SDCL §§ 12-16-1, 12-16-17 (falling on September 16, 2026). Absentee voting began in South Dakota on September 18, 2026. The fact that absentee voting has already begun weighs heavily against granting injunctive relief. See West v. Pa. Dep't of State, 753 F. Supp. 3d 424, 429 (W.D. Pa. 2024) ("Indeed, the fact that the election has, in a sense, already begun via absentee/mail-in/over-the-counter voting suggests the [Purcell] principle applies with even more force."), dismissed, No. 24-2913, 2024 WL 5509493 (3d Cir. Nov. 19, 2024); see also New Ga. Project v. Raffensperger, 976 F.3d 1278, 1283 (11th Cir. 2020) (staying the district court's grant of injunctive relief, emphasizing "we are not on the eve of the election—we are in the middle of it, with absentee ballots already printed and mailed"); Pierce v. N.C. State Bd. of Elections, 97 F.4th 194, 227 (4th Cir. 2024) (explaining that the district court "rightly heeded" Purcell where absentee ballots were distributed and in-person early voting had

begun, as "[t]he election is not merely 'close' or even 'imminent'—it is happening right now" (cleaned up)).

Fourth and finally, the feasibility of a court order granting relief for Walker at this time is troublesome. "Practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges." Lauters v. Neb. Sec'y of State, No. 4:24-CV-3175, 2024 WL 4517911, at *7 (D. Neb. Oct. 17, 2024) (citing Riley v. Kennedy, 553 U.S. 406, 426 (2008)). The election is already proceeding with absentee voting ongoing. Walker has not made any showing that the relief he requests is feasible, and this Court is hard pressed to imagine any form of relief it could feasibly grant Walker without running afoul of Purcell. See id. ("Should the Court order publication of new ballots for those who haven't voted yet? Different ballots issued to otherwise similarly situated voters would pose different legal problems. And that's assuming any of this is even feasible, for which the plaintiffs have made no showing." (internal citation omitted)).

Even if Walker had a high likelihood of success on the merits and collected the requisite signatures, the time it would take to re-print ballots and the risk doing so would pose to maintaining public faith in the election outweigh Walker's interest in relief. See West, 753 F. Supp. 3d at 425 (noting the plaintiffs had a high likelihood of success on the merits but nonetheless ruling that "common sense," timing, and "the risk of error and confusion" counseled against granting injunctive relief). Indeed, West noted that the feasibility of printing new ballots within one month of the election was "at question," and even if theoretically possible, printing new ballots raises concerns "about the errors such a rush risks creating, and the potential blow to public confidence in [the state's] election that risk engenders." Id. at 430 (footnote omitted). The unfeasibility of changing the ballot in the present election cycle weighs heavily against granting Walker's requested relief.

In sum, Walker fails to establish any of the four factors required to overcome the Purcell principle. See Onder, 2026 WL 2824043 at *15. South Dakota has a strong interest in managing its election, and the underlying merits of Walker's claims are dubious. See Eggers, 48 F.4th at 567 ("The weight of the State's interest in lawfully managing its elections and the fact that the signature distribution requirement appears not to violate the plaintiffs' legal rights tip the balance of the equities in the Secretary's favor and render an injunction contrary to the public interest.") Walker has not pled more than far-reaching and speculative assertions that he would suffer irreparable harm absent an injunction. Walker waited until within 54 days of the general election to file his complaint, which was within six days of the deadline for ballot printing. Absentee voting has begun. Changes to election procedure at this time are not feasible "without significant cost, confusion, or hardship." Merrill, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Walker is not entitled to injunctive relief.

### III. Failure to State a Claim for Damages

Walker has claims for damages which survive application of the Purcell principle, but Walker as a matter of law is not entitled to monetary relief on his claims. First, the Eleventh Amendment bars Walker's claims for damages based on violation of his civil liberties. Walker sues all Defendants in their official capacities and seeks monetary relief. Doc. 1 ¶¶ 3, 8–10. Defendants are all state officials. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Walker's official capacity claims against Defendants are construed as claims against the State of South Dakota. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for

alleged deprivations of civil liberties." Id. at 66. The Eleventh Amendment generally bars to suits against a state for money damages unless the state has waived its sovereign immunity. Id.; see also Hicks v. Clay Cnty., 636 F. Supp. 2d 903, 912 (W.D. Mo. 2008) ("Eleventh Amendment immunity applies to state officials sued for damages in their official capacity." (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985)). The State of South Dakota has not waived its sovereign immunity. Thus, Walker's claims against Defendants alleging violation of his civil liberties and intentional infliction of emotional distress must be dismissed.[6]

Next, Walker's claims for compensatory and punitive damages under the ADA and Rehabilitation Act fail. As explained above, it is dubious whether the ADA or Rehabilitation Act even applies to this context. Even if the ADA or Rehabilitation Act were applicable, punitive damages are not available under either statute. Meagley v. City of Little Rock, 639 F.3d 384, 390 (8th Cir. 2011). As for compensatory damages, proof of discriminatory intent is required for a plaintiff to recover compensatory damages under the ADA and the Rehabilitation Act. Id. at 389. To demonstrate discriminatory intent, a plaintiff "must show that the [defendant] was deliberately indifferent to the rights secured to [him] by the ADA and Rehabilitation Act in order to recover compensatory damages." Id. Walker has not alleged facts demonstrating that the Defendants were aware of his alleged ADA status or rights, let alone deliberately indifferent to these rights. See generally Doc. 1. Therefore, Walker's ADA and Rehabilitation Act claims, like all his other

---

[6] Count 7 of Walker's Complaint also alleges that Defendants leaked Walker's public assistance records in violation of SDCL § 28-1-29, SDCL § 28-1-34 , and 7 C.F.R. § 272. l(c). Doc. 1 ¶¶ 63–65. SDCL § 28-1-34 is a criminal statute and does not provide a cause of action in a civil case. SDCL § 28-1-29 and 7 C.F.R. § 272. l(c) regulate disclosure of information obtained from applicants for the federal Supplemental Nutrition Assistance Program (SNAP). Walker does not allege any facts that indicate Defendants disclosed information received from Walker in his application for such benefits. Even if Walker had pleaded such facts, suits against officials in their official capacity for money damages for violations of SDCL § 28-1-29 and 7 C.F.R. § 272. l(c) are barred under the Eleventh Amendment.

claims, must be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## IV. Conclusion

For the reasons explained above, it is hereby

ORDERED that Plaintiff's Motion for Preliminary and Permanent Injunction, Doc. 4, is denied. It is further

ORDERED that Defendants' Motion to Dismiss, Doc. 17, is granted and Plaintiff's Complaint is dismissed with prejudice.

DATED this 27th day of October, 2026.

BY THE COURT:

Roberto A. Lange

ROBERTO A. LANGE
CHIEF JUDGE